UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 07-244 (HHK) |
| v. | : | |
| ISRAEL FROST | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in aid of sentencing.

**I.    BACKGROUND**

Israel Frost appears before this Court to be sentenced pursuant to his plea of guilty to one count of Unlawful Distribution of Phencyclidine (PCP), in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). The facts underlying this offense, which the defendant reviewed with his attorney and acknowledged by signing the statement, "I fully understand this proffer and I acknowledge its truthfulness, agree to it and accept it without reservation," are as follows:

On April 18, 2007, a special employee (SE) of the Metropolitan Police Department advised detectives from the Narcotics and Special Investigations Division (NSID) that it could purchase a quantity of PCP from the Defendant. Later that day, at approximately 5:45 p.m., the SE met with two NSID detectives and was fully searched for contraband. The SE was then equipped with audio and video recording equipment, and it then drove (under surveillance) to the 600 block of Indiana Avenue, N.W., where the SE was to meet with the Defendant. Upon arrival, the SE stopped its car. The Defendant got into the front passenger seat and exchanged 2 vials of PCP for $500 in prerecorded MPD funds. The Defendant then exited the car and returned to D.C. Pretrial Services

to attend a drug class pursuant to his supervision in D.C. Superior Court case number 2006-CF2-19087.

The SE exited the block and turned the vials that had been purchased over to the NSID detectives. These vials were later analyzed by the Drug Enforcement Administration (DEA) and found to contain 22.0 grams of a mixture or substance containing Phencyclidine (DEA Lab. No. LF-924).

On April 26, 2007, the SE again made contact with the Defendant and arranged a drug transaction. At approximately 4:00 pm that day, the SE met with NSID detectives, was searched for contraband, and was outfitted with audio and video recording equipment. The SE, who again was under constant surveillance, drove to Taft Junior High School, located at 1700 Perry Street, N.E., and met with the Defendant, who was playing basketball, at roughly 6:30 p.m. When the SE arrived, the Defendant walked over to the SE's car and exchanged two vials of PCP for $500 in prerecorded MPD funds. The Defendant then returned to the gymnasium.

After leaving the area, the SE turned the two vials it had purchased over to an NSID detective. The vials were later submitted to the DEA and were found to contain 24.0 grams of a mixture or substance containing Phencyclidine (DEA Lab No. LG-165).

Finally, on May 9, 2007, the SE arranged a third transaction with the Defendant. At approximately 6:30 pm, the SE met with NSID detectives, was searched for contraband, and was outfitted with audio and video recording devices. The SE, who again was under constant surveillance, drove into the 600 block of Indiana Avenue, N.W., where he encountered the Defendant. The Defendant entered the SE's car and the two engaged in a transaction of PCP in exchange for $750 in prerecorded MPD funds.

After leaving the area, MPD officers recovered the three vials that the Defendant had sold to the SE. The vials were later submitted to the DEA and were found to contain 34.9 grams of a mixture or substance containing Phencyclidine (DEA Lab No. LG-537).

## II.     SENTENCING CALCULATION

### A.     Statutory Maximums

A violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(c) carries a maximum sentence of 20 years in prison, a fine of $1,000,000, and a term of supervised release of at least 3 years. See 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).

### B.     Sentencing Guidelines Calculation

The Guideline calculation in the Presentence Report places the defendant's base offense level at 25, which is based, in part, on the fact that the defendant distributed a portion of the PCP for which he is being held accountable at a school. See PSR ¶ 16, U.S.S.G. §§ 2D1.2(a)(2), 2D1.1(a)(3) and (c)(8). The defendant benefits from a three-level adjustment for acceptance of responsibility by virute of his plea. His total offense level is thus 22. See PSR ¶ 24. The PSR calculates the defendant's criminal history score as one, and his criminal history category as I. See PSR ¶¶ 29-30. The Guideline range for the defendant is therefore calculated at 41 to 51 months of imprisonment. See PSR ¶ 56.

## III.    GOVERNMENT'S RECOMMENDATIONS

For the reasons set forth below, the government respectfully recommends that the Court sentence the defendant to the high end of the applicable Guideline range – specifically, 51 months of imprisonment. This sentence satisfies the requirements set forth in Title 18, United States Code, Section 3553(a).

A.   Acceptance of Responsibility

The defendant has accepted responsibility for his conduct by means of his timely plea in this case.

B.   Application of the Federal Guidelines post-*Booker*

In United States v. Booker, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in Blakely v. Washington, 124 S. Ct. 2531 (2004). As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, Title 18, United States Code, Section 3553(b)(1). Booker, 125 S. Ct. at 756.

Nonetheless, and as the Supreme Court stated as recently this past December, a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. See United States v. Gall, ____ U.S. ____, 2007 WL 4292116, at *7 (December 10, 2007) ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark"). The district court should then consider all of the applicable factors set forth in Title 18 United States Code, Section 3553(a). See id. These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" (18 U.S.C. § 3553(a)(1)); the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment (18 U.S.C. § 3553(a)(2)); the Sentencing Guidelines and related Sentencing Commission policy statements (18 U.S.C. § 3553(a)(4) and (a)(5)); and the need to avoid unwarranted sentence disparities (18 U.S.C. § 3553(a)(6)).

The Guidelines are the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions. See United States v. Rita, ___ U.S. ___, 127 S.Ct. 2456 (2007). The Guidelines represent the distillation of two decades of careful study of sentencing practices across the country, and correlate as well to the varying severity of crimes as defined by Congress. Indeed, the Sentencing Commission formulated the Guidelines only after initially canvassing prior sentencing practice and attempting to identify and assign weights to all the factors – both aggravating and mitigating – that judges traditionally used in determining an appropriate sentence. See United States Sentencing Comm'n, Supplementary Report on the Initial Guidelines and Policy Statements 16-17 (1987); see also 28 U.S.C. § 994(m) (requiring Commission to "ascertain the average sentences imposed . . . prior to the creation of the Commission"); Comprehensive Crime Control Act of 1984, S. Rep. No. 98-225, at 168 (Commission should produce a "complete set of guidelines that covers in one manner or another all important variations that commonly may be expected in criminal cases"). And the Sentencing Commission has continued to study district court and appellate sentencing decisions and to "modify its Guidelines in light of what it learns." Booker, 125 S. Ct. at 766-67 (the Sentencing Commission will continue "collecting information about actual district court sentencing decisions . . . and revising the Guidelines accordingly").

The Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in Section 3553(a). Any Guidelines calculation is based on the individual characteristics of the offense and the offender, as required by Section 3553(a)(1). Each Supreme Court Justice in the various opinions in Booker recognized the express national policy goals, as articulated by Congress, that sentences be based on the offender's actual

conduct and history, and that sentenced be uniform across the country, to the extent possible. See, e.g., id. at 761 (majority opinion of Breyer, J.) ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity."); id. at 759 ("Congress' basic statutory goal – a system that diminishes sentencing disparity – depends for its success upon judicial efforts to determine, and to base punishment upon, the *real conduct* that underlies the crime of conviction."); id. at 783 (dissenting opinion of Stevens, J.) ("The elimination of sentencing disparity, which Congress determined was chiefly the result of a discretionary sentencing regime, was unquestionably Congress' principal aim."); id. at 789 (dissenting opinion of Scalia, J.) ("the primary objective of the Act was to reduce sentencing disparity.")

The Guidelines thus seek to implement – in a fair and uniform way – the offense specific characteristics that, themselves, comprise the "individualized assessment" the Supreme Court commends in Gall. See Gall, at * 7. It thus remains true that, absent unusual circumstances, the sentence in a criminal case should fall within the Guideline range as determined by the district court. In this case, as explained further below, no unusual circumstances exist that warrant an exception to the preference for Guideline sentencing.

    C.    <u>The Guideline Calculation in the PSR Is Correct</u>

The defendant contends that the PSR incorrectly calculated his base offense level because the defendant neither pled guilty to nor stipulated to a violation of 21 U.S.C. § 860 (Defendant's Sentencing Memorandum at 3-4). However, in this case, the defendant stipulated to conduct that specifically established a more serious offense. Therefore the PSR writer was correct in calculating the defendant's base offense level according to U.S.S.G. § 2D1.2(a)(2).

Section 1B1.2(a) of the United States Sentencing Guidelines specifically requires that the offense guideline is determined by the offense of conviction <u>except</u> "in the case of a plea agreement . . . containing a stipulation that specifically establishes a more serious offense than the offense of conviction." U.S.S.G. § 1B1.2(a). While the defendant in this case entered a plea of guilty to one count of Unlawful Distribution of PCP, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), the specific factual stipulations he entered into establish a violation of the more serious offense of 21 U.S.C. 860, Distribution in or Near Schools of Colleges.

Specifically, the defendant in this case entered into a plea agreement with the Government that encompassed the statement of the offense laid out in the written proffer of evidence attached to the plea agreement. <u>See</u> Plea Agreement at p.2. When he did so, he agreed that this "Factual Stipulation" "fairly and accurately describe[d his] actions and involvement in the offenses to which" he pled guilty. <u>Id.</u>

The proffer of evidence, in turn, was read, reviewed, and signed by both the defendant and his counsel. <u>See</u> Proffer of Evidence at p.4. The defendant specifically agreed as follows:

> I have discussed this proffer fully with my attorney, Mary Petras, Esquire. I fully understand this proffer and I acknowledge its truthfulness, agree to it and accept it without reservation. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this proffer fully.

Proffer of Evidence at p.4. Within the factual proffer, the defendant specifically agreed that his April 26, 2007, sale of PCP took place at Taft Junior High School, located at 1700 Perry Street, N.E., where the defendant was playing basketball.

The issue before this court is whether the defendant's acknowledgment of these facts is sufficient to specifically establish the more serious offense of distributing drugs on the grounds of a school. As the Seventh Circuit recognized in United States v. Loos, 165 F.3d 504 (7th Cir. 1998), in the context of establishing the appropriate based offense level, "stipulation" should be read to mean "any acknowledgment by the defendant that he committed the acts that justify use of the more serious guideline." Id. at 508; see also United States v. Braxton, 903 F.2d 292 (4th Cir.1990), reversed on other grounds, 500 U.S. 344 (1991) (defining "stipulation" similarly).[1]

In the government's view, because the defendant specifically stipulated to more serious conduct that comprises a violation of 21 U.S.C. § 860, it is appropriate for this court to use Section 2D1.2 in establishing his base offense level.

    D.    The Defendant's Conduct Underlying this Offense Fully Justifies a High-end Sentence.

The Government respectfully asks this court to sentence the defendant to a sentence at the high end of the applicable guideline range, specifically a sentence of 51 months of incarceration.

Such a sentence is warranted in this case by the defendant's conduct. Here the defendant distributed PCP three different times while under pretrial supervision in a pending case before Judge Craig Iscoe in the District of Columbia's Superior Court (Criminal Case 2006 CF2 19087). That

---

[1] Defendant cites United States v. Watterson, 219 F.3d 232, 239 (3d Cir. 2000) in support of his argument. That case specifically discussed the split in the circuits on whether "relevant conduct" should be considered when establishing a base offense level. See id. at 234-35. That case, however, did not address the issue here – namely whether the court can consider and apply a different base offense level when the defendant has specifically stipulated to conduct that established a greater offense level. See id. at 238-39 ("[H]ad [the defendant] stipulated to committing a more serious offense, the offense guideline section selected could and should have reflected that offense") (citing United States v. Nathan, 188 F.3d 190 (3d Cir.1999), which concerned a case in which the defendant had orally assented (by saying "yes" during a Rule 11 colloquy) to certain relevant facts).

case, which was filed on August 31, 2006, charged the defendant with Possession with the Intent to Distribute PCP. The case resulted from a traffic stop; during a consensual search of the car that was driven by the defendant, officers recovered a glass vial containing 19.1 grams of PCP. The defendant was found guilty by a jury on September 20, 2007, of the lesser-included offense of possession of PCP, and subsequently sentenced to 180 days of incarceration with the execution of his sentence entirely suspended.

The three instances of distribution that comprise this case took place while the defendant was under pretrial supervision in his Superior Court case. And each distribution took place in an area that ought to be free from such activity. As discussed above, one of his sales took place at Taft Junior High School. Perhaps even more shocking, the other two sales took place in the 600 block of Indiana Avenue, N.W., both while the defendant was engaged in activities directly related to his pretrial supervision in his Superior Court case. In one instance, he even left a drug treatment class to complete his transaction with the SE in this case.

The guidelines provide no mechanism for specifically accounting for the fact that the defendant was under pretrial supervision at the time he committed these offenses. This court, however, can and should do so, if for no other reason than the egregious nature of the defendant's conduct.

## IV. CONCLUSION

Wherefore, the government respectfully requests that the Court sentence the defendant to 51 months of imprisonment.

                                              Respectfully submitted,

                                              JEFFERY A . TAYLOR
                                              United States Attorney
                                              Bar No. 498610

                                                     /s/
                                              _____
                                              JOCELYN S. BALLANTINE
                                              Assistant United States Attorney
                                              Federal Major Crimes Section
                                              California Bar No. 208-267
                                              555 4th Street, N.W.
                                              Washington, DC 20001
                                              Phone: 514-8203
                                              Fax: 514-6010